# United States Court of Appeals
## For the First Circuit

---

No. 02-9008

IN RE: COLONIAL MORTGAGE BANKERS CORP.,
Debtor.

---

BANCO SANTANDER DE PUERTO RICO,
Plaintiff, Appellant,

v.

HANS LOPEZ-STUBBE, TRUSTEE, AND WASHINGTON MUTUAL BANK,
Defendants, Appellees.

---

APPEAL FROM THE BANKRUPTCY APPELLATE PANEL
OF THE FIRST CIRCUIT

---

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

---

Wanda Luna Martinez, with whom Montañez & Alicea Law Offices was on brief, for appellant.
Iván R. Fernández-Vallejo, with whom Goldman Antonetti & Cordova, P.S.C., Jorge Souss, and Rodriguez & Fernández were on brief, for appellees.

---

March 26, 2003

---

**SELYA**, **Circuit Judge**.  This is the latest chapter in a seemingly endless bankruptcy litigation.  We previously adjudicated the underlying dispute, involving rights to a substantial bank account standing in the name of the debtor, in favor of the trustee in bankruptcy.  See Crefisa Inc. v. Washington Mut. Bank, 186 F.3d 46 (1st Cir. 1999).  The appellant attempts an end run around that ruling.  Because our prior adjudication precludes the appellant's claim, we affirm the dismissal of its complaint.

## I.

## Background

Our earlier decision limns the full historical relationship, both procedural and factual, that is needed to put this proceeding into perspective.  See id. at 47-49.  Rather than retrace our steps, we include here only the bare minimum that is necessary to frame the issues on appeal.  We draw our account from the brute facts that appear on the face of the complaint, the supporting documentation referenced therein, and matters susceptible to judicial notice.

On April 4, 2000, Banco Santander de Puerto Rico (Santander) filed a complaint in the federal district court requesting the court to order Washington Mutual Bank to turn over funds deposited in a certain "Golden Passbook" account.  The complaint alleged that, on November 26, 1986, Caguas Federal Savings Bank loaned Milton Rua, president of Colonial Mortgage

Bankers Corp., $500,000; that Rua signed a promissory note (the Note) in that amount and simultaneously pledged the Golden Passbook account to secure payment of the Note; and that Rua used the loan proceeds to fund the Golden Passbook account. The complaint then cited, and incorporated by reference, earlier litigation involving these funds, namely, Civil Action No. 87-1874, in the United States District Court for the District of Puerto Rico.

In that regard, the complaint alleged that Bowery Savings Bank (predecessor in interest to Washington Mutual) sued Rua, Colonial, and Caguas Federal in the same month that Colonial sought the protection of the bankruptcy court, alleging various defalcations in connection with a mortgage loan servicing agreement. The complaint proceeded to cite, and incorporated by reference, a bankruptcy case (Bankr. No. 87-03026) in which the bankruptcy court had ordered Caguas Federal to turn over the funds held in the Golden Passbook account to the trustee in bankruptcy (Hans López-Stubbe). Caguas Federal had complied with the turnover order, delivering a check for $557,720.86 (principal plus accrued interest) to the trustee on or about November 1, 1989.

The Resolution Trust Corporation (RTC) was appointed as the receiver of Caguas Federal in August of 1999. According to the complaint in the instant case, the RTC thereafter "sold and assigned to [Santander] the assets that it acquired from Caguas . . . , which included Rua's loan with its collateral," and Santander

then sold to Crefisa "all the assets that it acquired from RTC, including the loan granted to . . . Rua with its collateral." Crefisa proceeded to bring an action to recover the monies on deposit in the Golden Passbook account, but lost because, in the words of the complaint, "[i]t was determined that the collateral was not transferred with the loan, and that Crefisa did not have standing to claim the monies." The complaint alleges that Crefisa thereupon transferred the loan back to Santander, "which has the collateral, so that Santander may claim the monies."

The defendants, López-Stubbe and Washington Mutual, asked the bankruptcy court to take judicial notice of the prior proceedings involving the Golden Passbook account, see Fed. R. Evid. 201, and simultaneously moved for dismissal of the complaint on res judicata grounds. They argued that the earlier proceeding brought by Crefisa precluded Santander's current claim. The bankruptcy court agreed and granted the motion. Banco Santander de P.R. v. López-Stubbe (In re Colonial Mtge. Bankers Corp.), Ch. 7 Case No. B87-03026(ESL), Adv. No. 00-0026, slip op. at 6 (Bankr. D.P.R. July 10, 2001). Santander appealed. The Bankruptcy Appellate Panel rejected the appeal. Banco Santander de P.R. v. López-Stubbe (In re Colonial Mtge. Bankers Corp.), No. 01-073, slip op. at 26-27 (B.A.P. 1st Cir. Aug. 16, 2002). Santander now appeals to this court.

-4-

## II.

## Analysis

## A.

## Legal Principles Governing Appellate Review

The jurisprudence of Rule 12(b)(6) is applicable to motions to dismiss in bankruptcy cases. See Fed. R. Bankr. P. 7012(b) (incorporating by reference Fed. R. Civ. P. 12(b)(6)); see also Lawrence Nat'l Bank v. Edmonds, 924 F.2d 176, 180 (10th Cir. 1991); In re Metrobility Optical Sys., Inc., 279 B.R. 37, 40 (Bankr. D.N.H. June 5, 2002). Thus, we review a dismissal of an action for failure to state a claim de novo, adhering to the same criteria that bound the lower courts. See Arruda v. Sears, Roebuck & Co., 310 F.3d 13, 18 (1st Cir. 2002); Garrett v. Tandy Corp., 295 F.3d 94, 97 (1st Cir. 2002). In that process, we assume the truth of all well-pleaded facts and indulge all reasonable inferences that fit the plaintiff's stated theory of liability. Rogan v. Menino, 175 F.3d 75, 77 (1st Cir. 1999); Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). We are not bound, however, to credit "bald assertions, unsupportable conclusions, and opprobrious epithets" woven into the fabric of the complaint. Chongris v. Bd. of Appeals, 811 F.2d 36, 37 (1st Cir. 1987) (citation and internal quotation marks omitted). We can affirm the allowance of a motion to dismiss only if the plaintiff's factual averments hold out no

hope of recovery on any theory adumbrated in its complaint. <u>Rogan</u>, 175 F.3d at 77.

These principles require us to consider not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice. <u>Cruz</u> v. <u>Melecio</u>, 204 F.3d 14, 21 (1st Cir. 2000); <u>Beddall</u> v. <u>State St. Bank & Trust Co.</u>, 137 F.3d 12, 16-17 (1st Cir. 1998); <u>Lovelace</u> v. <u>Software Spectrum Inc.</u>, 78 F.3d 1015, 1017-18 (5th Cir. 1996). The first part of this rule is consistent with the axiom that a writing is the best evidence of its contents. <u>See</u>, <u>e.g.</u>, <u>Beddall</u>, 137 F.3d at 16-17. The second part of this rule is consistent with the hoary tenet that a court "may look to matters of public record in deciding a Rule 12(b)(6) motion." <u>Boateng</u> v. <u>Interamerican Univ.</u>, 210 F.3d 56, 60 (1st Cir. 2000).

Despite these familiar principles, the appellant challenges the bankruptcy court's decision to go outside the margins of the complaint proper in weighing the res judicata defense. That is an affirmative defense, the appellant says, and should be left to proof at summary judgment or at trial. As a theoretical matter, this challenge is baseless. In an appropriate case, an affirmative defense may be adjudicated on a motion to dismiss for failure to state a claim. <u>See</u>, <u>e.g.</u>, <u>Blackstone Realty LLC</u> v. <u>FDIC</u>, 244 F.3d 193, 197 (1st Cir. 2001); <u>LaChapelle</u> v. <u>Berkshire Life Ins. Co.</u>, 142 F.3d 507, 509 (1st Cir. 1998); <u>Kale</u> v.

Combined Ins. Co., 924 F.2d 1161, 1165 (1st Cir. 1991). The affirmative defense of res judicata is no exception. See, e.g., Boateng, 210 F.3d at 60; Kale, 924 F.2d at 1165. Even without a motion, "a court on notice that it has previously decided an issue may dismiss the action sua sponte, consistent with the res judicata policy of avoiding judicial waste." Bezanson v. Bayside Enterps., Inc., 922 F.2d 895, 904 (1st Cir. 1990).

The conclusion that an action can be dismissed on the basis of an affirmative defense, such as res judicata, does not end our inquiry. Such a dismissal only can occur in an appropriate case. Two conditions must be met. The first condition is that the facts that establish the defense must be definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice. The second condition is that the facts so gleaned must conclusively establish the affirmative defense. See Blackstone Realty, 244 F.3d at 197; LaChapelle, 142 F.3d at 509.

## B.

## Applying the Principles

Against this backdrop, we turn to the validity of the affirmative defense in this case. The question we must answer is whether, applying the rules enumerated above, Santander's claim is barred by the doctrine of res judicata.

Federal law determines whether an earlier judgment, rendered in a federal court, bars the maintenance of a subsequent federal court action. Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 37 (1st Cir. 1998). Under federal law, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). Thus, the elements of a res judicata defense are (1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions. Gonzalez v. Banco Cent. Corp., 27 F.3d 751, 755 (1st Cir. 1994).

In this instance, the face of the complaint acknowledges the existence of an earlier adversary proceeding. That proceeding resulted in a judgment on the merits in favor of the defendants (appellees here). See Crefisa, 186 F.3d at 48-49. This court ultimately affirmed the bankruptcy court's disposition. Id. at 52. Since that decision constitutes a final judgment for purposes of res judicata, see Perez v. Volvo Car Corp., 247 F.3d 303, 309 n.4 (1st Cir. 2001) (regarding judgment from appellate court as "final for res judicata purposes," notwithstanding ongoing proceedings); R.I. Hosp. Trust Nat'l Bank v. Bogosian, 11 F.3d 1092, 1095-96 (1st

-8-

Cir. 1993) (similar), the first element of the res judicata defense is satisfied.

The identicality of the claims asserted in the two actions cannot seriously be questioned. We described the cause of action proffered in <u>Crefisa</u> in the following terms:

> On October 6, 1991, Crefisa brought an adversary proceeding in the Colonial bankruptcy case asserting a security interest in the Golden Passbook account; the claim was based on the pledge of the Golden Passbook account that Rua had made to Caguas on November 28, 1986, to secure his promissory note. Since the funds in the Golden Passbook account had been turned over to the trustee pursuant to the bankruptcy court's earlier order, the relief sought by Crefisa was an order from the bankruptcy court requiring the trustee to transfer the proceeds to Crefisa.

186 F.3d at 48. The substance of the cause of action that Santander asserts is materially identical. The only difference is the identity of the party seeking relief. Thus, the second element of the res judicata defense is satisfied.

We now turn to the third element of the defense. The defendants are the same in both cases. The plaintiffs, however, are nominally different. The question thus reduces to whether the plaintiffs, though not identical, are sufficiently in privity to satisfy this element. <u>Gonzalez</u>, 27 F.3d at 757-58.

The historical record strongly suggests that this query should be answered in the affirmative. Crefisa and Santander were treated as a single entity throughout the earlier litigation, and

neither of them disputed that characterization. See Crefisa, 186 F.3d at 48 (concluding from the record that Crefisa "is apparently a wholly owned subsidiary of Banco Santander"); see also In re Colonial Mtge. Bankers Corp., Civ. No. 95-1614, 1998 WL 638341, at *6-*7 (D.P.R. Sept. 11, 1998) (using the party designations "Santander/Crefisa," "Crefisa," and "Santander" interchangeably and pervasively). We have heretofore considered such imbricated corporate relationships sufficient to establish privity for purposes of claim preclusion. See Aunyx Corp. v. Canon U.S.A., Inc., 978 F.2d 3, 7 (1st Cir. 1992). Thus, the third element of the res judicata defense is satisfied.

From what we already have written, it appears as if all three elements of the res judicata defense are extant here (and therefore, that the bankruptcy court appropriately dismissed the complaint under Rule 12(b)(6)). In an effort to convince us otherwise, Santander makes five counter-arguments. None of them need occupy us for long.

First, Santander maintains that the Crefisa decision did not reach the merits, but, rather, turned on an issue of standing. Although Santander makes this assertion in its complaint, we are not bound by it. After all, this characterization is not a factual allegation deserving of indulgence under Rule 12(b)(6). See Chongris, 811 F.2d at 37. Instead, it is a legal conclusion — and one that has no basis in the law. We explain briefly.

In _Crefisa_, we summarized the bankruptcy court's rationale, noting that the court applied the substantive law of Puerto Rico in its disposition of the case. 186 F.3d at 48-49. We then examined the district court's reasons for reversing the bankruptcy court's holding. _Id._ at 49. Having set the stage, we proceeded to analyze Puerto Rico law and apply it to the discerned facts. That exercise resulted in a reversal of the district court's ruling and the concomitant reinstatement of the bankruptcy court's judgment. _Id._ at 52. At each and every step of this pavane, the relevant judicial rulings were merits-based. A conclusory allegation that the rulings implicated standing does not change their fundamental character any more than calling a sow's ear a silk purse makes a credible fashion statement. A party cannot misconstrue legal precedent and then allege that misconstruction as a "fact" in order to deflect the preclusive effect of a prior adjudication. _Cf._ _Kale_, 924 F.2d at 1168 ("Whenever a litigant decides to enter the court system to seek justice, he must play by the rules.").

Santander's next challenge also is built upon a porous foundation. It interprets our opinion in _Crefisa_ as turning on which party held the rights to the collateral that had been tendered to secure the Note. On that reading, it posits that its reacquisition of the Note alters the nature of the claim asserted

here (and, therefore, renders the claims asserted in the two actions different).

This is little more than wishful thinking. Our earlier decision did not turn on the passing of the rights to the collateral from party to party but on the effect of an attempted assertion of those rights as against third parties. Crefisa, 186 F.3d at 51. Cognizant that the Note had been endorsed by RTC to Santander and then to Crefisa, we assumed that those endorsements automatically transferred the security interest in the collateral. Id. at 51-52. We nonetheless determined that, under the law of Puerto Rico, such transfers had no effect against a third party (such as the trustee in bankruptcy) unless and until certain formalities had been accomplished. Id. at 51. "So far as the record show[ed], this ha[d] never occurred." Id. (emphasis supplied). We made no distinction between the transfer from RTC to Santander and the subsequent transfer from Santander to its corporate relative (Crefisa). Consequently, the new fact alleged in Santander's complaint does not meaningfully differentiate its present claim from the one previously adjudicated in Crefisa.

Santander also maintains that the "identicality of parties" element is not satisfied here. In this regard, it asseverates that the bankruptcy court's determination that Santander and Crefisa were in privity was no more than an unsubstantiated ipse dixit. It says now — although it did not

allege in its complaint — that Crefisa is not a subsidiary of Banco Santander de Puerto Rico, but, rather, a subsidiary of that company's parent corporation, Banco Santander de España. This asseveration lacks force.

As a procedural matter, Santander and Crefisa were treated as peas in a pod throughout the earlier litigation. See, e.g., In re Colonial Mtge. Bankers Corp., supra, 1998 WL 638341, at \*6-\*7 (treating Santander and Crefisa as one party without eliciting any objection). Inasmuch as that position was taken the first time around, Santander cannot disown Crefisa at this late date. Beddall, 137 F.3d at 23 ("We generally will not permit litigants to assert contradictory positions at different stages of a lawsuit in order to advance their interests."); Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F.2d 208, 212 (1st Cir. 1987) (adopting the view that "[j]udicial estoppel should be employed when a litigant is playing fast and loose with the courts, and when intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice") (internal citations and quotation marks omitted).[1]

---

[1]In an effort to turn the tables, Santander invokes the judicial estoppel doctrine offensively (rather than defensively). In this regard, it argues that the appellees should be estopped from disputing that standing was the pivotal issue in Crefisa because, in that case, the same parties filed a "Motion to Dismiss and/or for Summary Judgment based on lack of standing." In re Colonial Mtge. Bankers Corp., supra, 1998 WL 638341, at \*1. This argument gains no ground. As we have explained, Santander's complaint puts courts on notice of prior proceedings relevant to

-13-

If more were needed — and we doubt that it is — the distinction that Santander tries to draw makes no substantive difference for purposes of this appeal. The district court adjudicating the earlier claims specifically observed that the Note "was endorsed to the order of Banco <u>Santander P.R.</u> by RTC as Caguas' receiver and delivered to said bank as a result of the . . . Agreement between RTC and Santander/Crefisa." <u>In re Colonial Mtge. Bankers Corp.</u>, <u>supra</u>, 1998 WL 638341, at *6 (emphasis supplied). Thus, we can only conclude that Banco Santander de Puerto Rico was a party to the specific transaction at issue in our earlier <u>Crefisa</u> decision.

In all events, Santander and Crefisa, even on Santander's current version of the corporate interrelationship, are sister corporations under the control of a common parent. On any view of the record, these sister corporations share a common economic interest in attempting to satisfy a single debt, represented by the Note, by establishing a security interest in the Golden Passbook account and wresting the funds from the steely grip of the trustee in bankruptcy. Within this context, the corporate interrelationship among the parties gave Crefisa adequate incentive to litigate this common interest. No more is exigible to establish

_____

the issues therein. We have determined, apart from any arguments made by the appellees, that those proceedings bar Santander's present action. Thus, whether the appellees should be barred from asserting the res judicata defense makes no difference in this appeal. <u>See</u> <u>Bezanson</u>, 922 F.2d at 904.

privity for purposes of the res judicata defense. See Aunyx Corp., 978 F.2d at 4, 7 (finding party identicality of technically separate but related corporations when they shared a common interest); see also Iannochino v. Rodolakis, 242 F.3d 36, 45-46 (1st Cir. 2001) (finding privity when one former law partner was the "de facto representative" of the other anent a common economic interest). Any other result would invite endless varieties of manipulation and reward "tactical maneuvering designed unfairly to exploit technical nonparty status." Gonzalez, 27 F.3d at 761.

Fourth, Santander charges that the bankruptcy court erred in failing to convert the appellees' motion to dismiss into a motion for summary judgment. Had the court done so, Santander suggests, it could have introduced the RTC-Santander asset purchase agreement to support its claim.

This argument is flawed in at least two respects. For one thing, matters of public record are fair game in adjudicating Rule 12(b)(6) motions, and a court's reference to such matters does not convert a motion to dismiss into a motion for summary judgment. Boateng, 210 F.3d at 60. For another thing, any attempt to introduce the asset purchase agreement would have been futile. After a party has litigated and lost, the doctrine of res judicata precludes any attempt on its part, the second time around, to supplement the evidentiary record. See McCurry, 449 U.S. at 94; Mass. Sch. of Law, 142 F.3d at 39.

Finally, Santander — grasping at straws — cites dictum in Crefisa outlining a theory under which that case's holding might not apply to a bankruptcy trustee. See Crefisa, 186 F.3d at 52. Santander takes that language as an invitation for it to relitigate the result of the earlier case. No such invitation was extended.

We specifically noted in the earlier case that Crefisa failed to make the argument that we called a possible "escape hatch." Id. Crefisa thus forfeited the right to press that argument. See Teamsters, Chauffeurs, Warehousemen, and Helpers Union v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992). Because res judicata bars not only those theories that were actually litigated in the earlier action but also those theories that could have been litigated therein, see McCurry, 449 U.S. at 94; Mass. Sch. of Law, 142 F.3d at 39, the invitation to bring this argument before us in a future case clearly was not intended for any party in privity with Crefisa. Santander is such a party.

## III.

### Conclusion

We need go no further. Motions to dismiss are in order when a plaintiff has failed to state a claim upon which relief can be granted. This vehicle may be employed when the complaint, the documents incorporated by reference in it, matters of public record, and other matters susceptible to judicial notice coalesce

-16-

to show beyond doubt that an action is barred, under the doctrine of res judicata, by a prior adjudication.

This is such a case.  The complaint makes it abundantly clear that Santander, acting through its privy and corporate relative, had a full and fair opportunity to litigate its claim.  It did so and lost.  Having had one bite of the cherry, Santander is not entitled to another.  As the lower courts properly held, its action is easy prey for the res judicata defense.


**Affirmed**.